We're going to move now to Appeal 20-3151, Roberto Mata v. Mark Williams, and we are going to begin with oral argument from the appellant, and Mr. Rayfield, you may begin. Mike Rayfield Good morning, Your Honors. May it please the Court, Mike Rayfield on behalf of Roberto Mata. Mr. Mata was denied his right to counsel because his lawyer abandoned a meritorious motion to suppress based on no discernible strategy. I'm going to jump right into the state's procedural ruling, and I want to try to get to the heart of the matter by focusing in on one key case. The state court's procedural ruling was inadequate because, under the Illinois Supreme Court's decision in People v. West, a claim like Mata's doesn't need to be raised on direct appeal. It's supposed to be raised in a post-conviction proceeding because that's where it can be fully developed. The rule in West— The Ruling West—    The Ruling West— The Ruling West— It was a post-conviction case where the state argued that an ineffective assistance claim was barred because it wasn't raised on direct appeal, and the court said, quote, We have repeatedly noted that a default may not preclude an ineffective assistance claim for what trial counsel allegedly ought to have done in presenting a defense. That principle is consistent with the cases decided on direct appeal, which have held that it's premature to bring a claim like this at that stage. Everyone agrees that West is good law and that Mata's claim falls within its category. It's about what a lawyer failed to do rather than not what he did. And for that reason alone, the state court's procedural ruling is inadequate. And that's true no matter what adequacy actually means in this context. Both parties have spent some time sort of parsing the distinction between whether a rule is established and whether it's correctly applied. But at the end of the day, in this case, the distinction doesn't matter that much. One way to look at the state's procedural ruling is that it's wrong because it's inconsistent with the rule in West. Another way to think a bit about it is that Illinois courts have been inconsistent in applying its rule, which means that it's not established as a matter of federal law. But one of those things has to be true. Either the rule is what West says it is, or the rule applied to Mata's case is not firmly established. But in any event, the state court's rationale in Mata's case was way off because the record in Mata's case was not sufficient to resolve his claim. The state court simply held that because Mata's claim was based in part on, quote, matters in the trial record, his claim was barred. But the question is whether Mr. Mata had a full opportunity to develop the claim. The state court didn't even say he did, nor could it. There were multiple gaps in the record that were critical to resolving the claim. The biggest one is that the record was totally silent on why Mr. Mata's lawyer abandoned the motion to suppress the videotaped statement. And we've cited several cases like, sorry, like People v. Ligon and People v. Parker, which have held that even fairly well-developed ineffective assistance of counsel claims were, quote, more appropriately addressed in a proceeding for post-conviction relief for that exact reason, to hear counsel's explanation. But beyond that, Mr. Mata explained in the state court that the trial record didn't reflect the promises made to him in order to get him to agree to make the videotaped statement. He wasn't given a chance to develop that claim, but we now know what his allegations were, which were that the police promised him that if he made the videotaped statement, they wouldn't imprison his fiancee and his daughter wouldn't be taken away by the state. Now under this court's and U.S. Supreme Court precedent, threats to a suspect's family are presumptively coercive. So without this evidence, he couldn't fully present his ineffective assistance claim. From the trial counsel's perspective, though, to introduce that type of information would be a challenge because Mr. Mata doesn't bring that up until much later. It's granted that the record does not reflect the reasoning with regard to the second motion. Is it reasonable inference that the counsel saw the video, didn't find it to be coercive, and dropped the motion? Well it's conceivable that he decided that the motion didn't have merit, but we can't say that without speculation, especially in light of the content and the posture of the mostly related Fourth Amendment motion with very good findings by the trial judge on credibility. And then he just failed to get a ruling on the motion. He didn't actually withdraw it, he just left it sitting on the docket. It's this strange statement, that was one other half of my motion to suppress. I've read it a hundred times, but I don't understand it, Your Honor. And whether this was because of an oversight, or because he didn't want to take up the judge's time, or because he got overwhelmed with trial prep, we don't know. But it wasn't based on any strategy, and the state courts never supplied one. They just used the word strategy, but they didn't actually explain what this strategy was because it was never offered. Mr. Rayfield, do we have Mr. Mata under oath in an affidavit giving that account of the coercion in the record? Well, no, but we have his testimony at the motion to suppress here, giving that account. At the, oh I'm sorry, so partially, we have... I'm talking about the coercion before the video statement, the basis of this claim. No, we don't have an affidavit for Mr. Mata. Okay. In the state court, I'm sorry. In the state court, right. So, let's go back to West and talk about Erickson as well, and the state's arguments in this case. I understand it to be that you've got this passage in West that looks great for your side, right? But you also have Erickson, and there's language in West to this effect as well, that what matters is in essence whether we need evidence beyond, and whether the defendant is relying on evidence beyond the trial record. And here he doesn't seem to have submitted any evidence beyond the trial record with his PCR petition. So just a quick qualifier on that point. Evidence, you're right. On appeal of the PCR petition, he did reference the promises in his briefing. But let me try to get to the heart of your question, which is how to reconcile my reading of West with Erickson. And I think I can. Erickson was not a case about what counsel should have done. Erickson was a case where the core of the petitioner's claim was that his lawyer called a so-called expert psychologist who didn't actually have a psychology degree. So it was really a claim about what counsel did. And the facts needed to develop that claim were very clearly developed in the record. It had been revealed at trial that the expert didn't have a psychology degree. And then what's interesting about Erickson is after it explains that point, it then goes on to repeat West's rule. So I think the way to reconcile Erickson and West is that one is a case about ought to have done, and one is a case about what counsel did. But I don't even need to, that's not even my burden. Because it's the burden on the state to say that the rule that the state applied is firmly established. If you think that West and Erickson are somehow in inconsistent tension with each other, that means that the rule isn't firmly established. What if we disagree with you and conclude that the rule is firmly established and that the error that you're really complaining of at this point in the case is just an incorrect application to the facts of Mr. Mata's case? Do you still warrant relief under the failure to excuse the default for cause, the procedural default? So we have not, we are no longer pursuing the for cause avenue because I think the government correctly pointed out in its brief that Mr. Mata didn't pursue the appellate ineffectiveness ruling up through the Illinois Supreme Court, as we explained in our reply. But to answer your question more directly, if you disagree with my reading of West and you think that the question is whether the rule was correctly applied, I'm sorry, and you think that, I'm struggling with the framing of the question, but if you disagree with my ruling of West, and then I would still say that in order to determine whether a state court's decision is adequate, you have to look at whether what the LaBelle case says, whether it's being consistently applied. And that necessarily entails an inquiry into what the state law is and whether it can be justified in Mr. Mata's case. Does that, I hope I've answered your question, but, sorry. Well, I'm actually having trouble with the concession here because it seems to me that Mr. Mata throughout his post-conviction proceedings has always raised the issue of the ineffectiveness of his, not only his appellate counsel, but his trial counsel. Because to look at one is to look at the other, because you can't resolve the appellate issue without looking at the trial counsel issue. So the, you know, I'd love to agree with you on this point, but unfortunately Mr. Mata didn't make the appellate ineffectiveness argument in the Illinois Supreme Court. He didn't pursue it all the way through. That's why we conceded in our reply that that avenue is no longer available to us. So we have to show that the trial court ineffectiveness claim is not procedurally barred. If I could, I think you might have a question, Your Honor. Let's suppose we get past the procedural obstacles here. We've got, there's no doubt that Mr. Mata is the only shooter. Victims all shot in the back, and his defense is self-defense. Right? Yes. And we've got medical evidence they were shot in the back. Right? I think that medical evidence is disputed, but I'll accept that. So let's suppose things had played out the way you're arguing, the motion to suppress had been granted. We still have Mr. Mata as the only shooter, victims all shot in the back. That seems, tell me how we get to prejudice. Sure. So for prejudice, I don't think you really have to look far beyond, I'll answer those points directly, but I don't think you have to look very far beyond what the state court actually said in Mata's appeal, which is that the quote, most salient evidence the state presented against the defendant, and the most critical to proving his guilt beyond a reasonable doubt, was the video statement provided by the defendant. I mean, I think, yes, we're not making a sufficiency argument, so there's no question that there was evidence from which the jury could have concluded that Mr. Mata's use of force was not reasonable, but this was a classic credibility dispute. Mr. Mata's testimony was that the men who assaulted Mr. Morris stood their ground, that they weren't running away, that one of them reached for his belt, in what looked to Mr. Mata like he was reaching for a gun. Sure, the jury could have disagreed with all this, and could have rejected it, and could have adopted the state's rationale, but in a case like this, as the state court pointed out, a videotaped concession is going to make a difference. But on the critical point, the video establishes he fires the shots, but the jury obviously did not believe what he said in the video, right, by way of self-defense or even imperfect self-defense, and they've got medical evidence showing these guys were all shot in the back. That's what I'd like you to address. So I'm a little confused by the question of the jury did not believe what he said in the video. What he said at trial was that the victims were not, or the men who assaulted Morris stood their ground, that they weren't running away, that he saw someone with a gun. This is different from what he said on the video. Okay, there are two different versions, he tells, right, and neither one seems consistent with victims being shot in the back. That's my problem. Well, his version at trial, his testimony at trial, was that they were facing him, that they were backing away, but that they stood his ground, but that they stood their ground when the shots were fired. I understand that's his version. Right. Reconcile that, please, for me with the medical evidence. So if you look at Appendix 9, 10 to 11, what the medical examiner conceded was that his testimony was dependent on the location of the various people offered by the state, and that his account may have been different if the position of the various actors were different. But the jury, either way, the jury could have rejected the state medical examiner's testimony that he was shot in the back and accepted Mr. Monta's testimony. How do you do that? I mean, seriously. Is there a dispute about the location of entrance and exit wounds? Well, okay, so let's take what you're saying as given. There were several men who were attacking Morris. Let's say that two of the men were, in fact, shot in the back. There's still testimony from Monta that one of the men was reaching for his gun and that he saw men firing shots. Remember, this is strickling prejudice. All we have to show is that there is a reasonable probability that the outcome would have been different if the video had been excluded. And I don't think, I'm not even sure that in light of the state appellate court's finding that the video evidence was the most important evidence of his guilt, there's certainly a reasonable probability that the verdict would have been different. I see I'm out of my time and I haven't reserved any, but I do want to answer Your Honor's question. We'll give you some rebuttal time. Thank you. Thank you, Mr. Rayfield. We're now going to move to counsel for the state, Mr. Cebula. Good morning. May it please the court, counsel, I'm Assistant Attorney General Michael Cebula on behalf of Respondent. This court should affirm the district court's judgment for two reasons. First, petitioner's claim is defaulted because the state court denied it based on the Illinois forfeiture rule, which this court has repeatedly held is an independent and adequate state law basis that bars federal relief. And second, the state court also reasonably concluded that the ineffective assistance claim is meritless. If I could focus to begin on the issue of default, Illinois courts apply the forfeiture rule in a very straightforward way. When a petitioner files a post-conviction petition, the court looks at the petition. And if it cites evidence that was not part of the trial record, then the petition can go forward. If, however, the petition only cites the trial record, doesn't cite or attach any new evidence, then the court says, this is a claim you could have brought on direct appeal, so it's forfeited. What happens if the petition says, in essence, I can present evidence outside the trial record but I don't have it attached to my petition yet? Sure, Your Honor. Illinois law is well settled on that. If you think you have evidence that's you're unable to obtain it because, for example, you're an inmate in prison, all you do is you put in your petition, here's the evidence I think I can get. I don't have it now. Please let me move forward. Please appoint a counsel so that I can pursue this evidence. So for example, in People v. Hobley, an Illinois Supreme Court case, there the petitioner alleged that his counsel should have supported a motion to suppress his confession with evidence about his medical condition and health problems he had. But he only cited evidence that was part of the trial record. So the Supreme Court said, well, that's a claim you could have brought on direct appeal, therefore it's forfeited. That's the exact rule the state court applied in this case. And that's no surprise because if you look at the petition, as I think some of the questions got to earlier, there's no new evidence cited in there. There's nothing in there saying, I can get evidence if you give me a chance. To the contrary, if you look at the petition, particularly page 1529 of the record, you'll see that his primary claim was that this claim could have been brought on direct appeal. And in fact, he blamed his appellate counsel for not bringing it on direct appeal. So the state court's ruling results in default, as this court has held many times, Smith v. Gatz, among other cases. This is an independent and adequate state law basis. Now my opponent has argued primarily in his opening brief that this rule is not regularly applied to claims about what counsel should have done. And he cites cases like West and Erickson. This rule is regularly applied to claims about what counsel should have done. As I just mentioned, People v. Hobley, the Illinois Supreme Court case applied it. We cite a number of similar cases on pages 20 and 21 of our brief. Now as far as West and Erickson, West is fundamentally different than the claim raised here. The petitioner argued that his counsel should have presented a different defense at trial and should have retained forensic experts to testify that, to point the finger basically at another person for committing the murder. And he specifically said in his petition, he attached new documents to his petition, and he specifically said, I can't retain an expert to testify on my behalf now. I'm indigent. But if you let me go forward with my petition, I know I can retain a forensic expert to support my claim. That's fundamentally different than here, when petitioner made no such allegations in his post-conviction petition. And in fact, as I just said, in his petition, he specifically said this is a claim that could have been brought on direct appeal. He does focus on one sentence from West, where West says, I believe, claims about what counsel should have done may not be raised on direct appeal, and they may not be subject to the context, because the only case that West cites for that sentence is Erickson. And Erickson is clearly a case where the Supreme Court applied the forfeiture rule to a claim about what counsel should have done. I think my opponent a few moments ago didn't really fully accurately characterize Erickson. The claim in Erickson was that counsel should have done a better job investigating the expert witness that they ultimately retained and found out he was not a psychologist, like he said. And he also should have retained other experts, and he attached affidavits from those potential experts. Still, though, the court said the documents that you were attaching, they really just duplicate information that was already known at trial. Therefore, your claim is forfeited. It could have been raised on direct appeal. So Erickson is clearly a case where the court applied the forfeiture rule to a claim about what counsel should have done. And in fact, Erickson cites other cases, including cases like People v. Jones, for that exact same point, that counsel should have presented evidence. That's a claim that's subject to forfeiture. Now, my opponent in his reply brief began to shift his argument a little bit and to say that under state law, he could not have raised this claim on direct appeal, because we don't know what counsel was thinking. Counsel never explained on the record why he chose not to pursue this motion to suppress. There's a couple major arguments with that problem, which, again, I think some of the questions got to. The first problem is that the post-conviction court specifically held that under state law, this claim could have been brought on direct appeal. So when he argues today that under state law, he could not have raised this argument on direct appeal, what he's really saying is that the post-conviction court misapplied, misunderstood state law. Well, it's a fundamental rule of habeas proceedings that you cannot argue that a state court misapplied state law. And that's what the United States Supreme Court held in Estelle v. McGuire. And that prohibition clearly applies to state procedure rules as well. This court has held that in a number of cases, cases like Oaks v. Pfister, Lee v. Foster. This court specifically said you can't avoid procedural default by arguing that a state court misapplied a state procedure rule. Now, to be clear, he can argue, as we clearly say in our brief, he can argue about whether the rule is regularly applied. That's an argument that requires us to basically do a survey of Illinois law, look at the entire body of Illinois law, and say, is this a claim that the courts tend to follow, or is it some obscure rule that's never applied? But he can't argue that in this specific case, it was misapplied. The second problem with that argument, as I just mentioned a moment ago, in his post-conviction petition, he specifically said this is a claim that could have been brought on direct appeal. So when he stands before you today and says he could not have brought this on direct appeal, he's taking a position that's exactly opposite of what he told the state court. Well, obviously you can't do that in federal habeas proceedings. You can't tell the state court one thing, have the state court agree with you, and then take an entirely different position in the federal courts. The last point on this, if I may, he's just flat out incorrect when he says he could not have raised this on direct appeal, because we don't know what counsel was thinking. Counsel never explained on the record what he was thinking. How do we know that he's wrong? One reason we know that he's wrong is that in this very case, on direct appeal, he raised a claim that his counsel should have impeached one of the state's witnesses with certain merits. So that's a claim about what counsel should have done, where he had nothing in the record where counsel explained why he didn't impeach the witness, and the court resolved that claim on the merits on direct appeal. And on page 22 of our brief, we cite a number of other cases where on direct appeal, state courts resolved claims about what counsel should have done, where there was nothing in the record about why counsel did or did not take a particular position. Can we address the PLA? Why would we be wrong to read the PLA as certainly the state law was the vehicle for Mata's claim, but at its core, he was challenging the state appellate court's decision that his ineffective assistance of trial counsel claim had no merit. So, you know, we can't read, we have to read the PLA in light of the state appellate court's decision. That decision bound up the ineffective assistance of counsel claims. Why would we be wrong to read the PLA that way? So if I understand the question, why would you be wrong to say that his ineffective assistance of appellate counsel claim has been preserved through the PLA? Because he didn't raise it in the PLA. He only raised his claim that trial counsel was ineffective. So those are three levels of state court review. So not just the appellate court, but also in the Illinois Supreme Court through the PLA. So my opponent was absolutely correct when he conceded that point. These are two separate claims. We don't ask, is this claim bound up? It has to be presented to the Illinois Supreme Court as a distinct claim. My question is how one reads the state appellate court decision, which absolutely integrates these claims. If I understand your question correctly, Your Honor, the Illinois appellate decision found that the claim about trial counsel was forfeited. It then reviewed the claim about appellate counsel because that's a potential excuse for the forfeiture. But he did not raise that claim in PLA. And I'm not aware of any precedent that says a claim that might be bound up in another claim counts as preserving it through the PLA. So again, my opponent was absolutely correct to concede that point. They are separate claims that have to be raised through all three levels, and he failed to do that. If I could make a couple last points on default is that my opponent says a lot in his reply briefing today that we need to know what counsel was thinking. We can't resolve this claim without knowing what counsel was thinking. That is absolutely not the law of Strickland. Strickland imposes a presumption that counsel's actions are part of a reasonable trial strategy. Strickland expressly says this is an objective test. In Harrington v. Richter, the United States Supreme Court case that we cited in our brief, the United States Supreme Court expressly said the courts should not be insisting that counsel explain on the record what they were thinking in order to resolve a Strickland claim. The court said this is an objective test, not a subjective test, and we cite other opinions from this court making that same point. Do you think we could grant relief without giving counsel an opportunity to be heard to explain? Could you grant relief? You can deny relief without hearing from counsel. I would be happy for you to deny relief on that basis, but I don't think you could grant relief without him explaining. My opponent's theory is that his attorney just flat out forgot about this motion. As I understand, that's his theory in his reply brief that he just forgot about it. So I think you would have to have counsel say, yes, I forgot about the motion for him to succeed. Are you, in what you just said about Strickland, are you ignoring our precedent that when the challenge action or inaction results from inadvertence or inattention rather than strategic decisions, the actions are not entitled to a presumption of reasonableness? Can you address that? Sure. I think he cites one case, I believe, from this court for the inattention point. That was a case where I believe counsel just didn't do any investigation. So failure to investigate claims under Strickland are a little bit different than trial strategy claims. But on the— That case does not broadly say—I think you may be reading that case a little too narrowly to apply only to failure to investigate. It doesn't say that. I disagree with my opponent's reading of that. But setting that aside, let's assume he's correct and there is some broad rule that Strickland does not apply, all a defendant has to do is say, my counsel is not paying attention. Let's assume that's the law. There's no evidence that this attorney was just not paying attention. I think that's the difficulty here. It seems to me there's no evidence one way or the other. You say it was strategic. I don't see your evidence. He says it was inattention. I don't think the record is silent. So we have a problem here. Well, when the record is silent under Strickland, we assume it's part of a reasonable strategy. And to answer—I think I'm hopefully answering your question about inattention. The record would not support that. I disagree that we don't have evidence that counsel's performance was adequate. This is an attorney who fought very hard for his client throughout pre-trial and during trial. This is not an attorney. Nothing in the record shows this is the type of attorney who would just forget about a motion. He won pre-trial motions. He called six witnesses to try to support a self-defense theory. And if we look at the record, some of the final pre-trial hearings, it was specifically brought up to counsel. You know, there's this motion pending, are we going to schedule a hearing for it? Counsel had an opportunity to do that. What did he do? The first time he said, let's just continue the case. The next time, what happened? They set trial. So his theory that counsel just forgot about the case or was not paying sufficient attention is contrary to the record. And again, we have to recall that we are in habeas proceedings, so there's a lot of deference that's given to the state court decision. He can't, you know, succeed just by showing it might be wrong. He has to show it was a completely unreasonable decision. And certainly, some of the questions about the prejudice component, he can't come close to showing prejudice. The videotape itself shows someone who is not distressed. It shows someone who's given a Miranda warning. It shows someone who said, I'm not being promised anything. I'm not being threatened. And of course, the evidence is that he shot these men in the back, which is exactly what the surviving victim said, is that we were trying to run away. We were shot in the back. With my remaining time, I just want to make one quick point because I think my opponent inadvertently misstated what the burden here is. This court's already found that the forfeiture rule is an independent and adequate state law basis. We have to show that it's regularly followed. This court has already held that. His burden is to show that, as this court has said, the United States Supreme Court has said, that it's applied so freakishly, so obscurely, so randomly, that no one could ever suspect that it might be applied in this case. That's certainly not true of the Illinois forfeiture rule because, as we cite in our brief, this is a rule that's been applied time after time in cases just like this. So therefore, unless there are any other questions, we would ask this court to affirm the district court's judgment. Thank you very much, Mr. Sebula. Mr. Rayfield will give you three minutes from rebuttal. Thank you. I want to start with the prejudice point very briefly. It's important to keep in mind that Mr. Mata had two defenses here. One is that the use of force was reasonably justified to defend Morris and himself. And the other defense was that he had an unreasonable belief that the use of force was necessary to defend these men. So even if the evidence did show that the men were running away, the jury could certainly have concluded that the murder, the jury could have concluded that he was entitled to that defense. So I think it's important to keep in mind that this is not just about whether he intentionally shot the victims, that these are broad defenses that he was raising in this case. Now as to the procedural bar, the government cites a number of cases where, including the court addressed on the merits, claims about what counsel should have done. But that doesn't mean that those, but all that could have meant in those cases is that the state didn't raise the argument that it was premature. For example, in Mata's case, the state didn't argue that the claim, that Mr. Mata's ineffective assistance claim on direct appeal should await the collateral proceeding. So there isn't that much to be read into cases like that because it's entirely possible that the state just didn't raise this affirmative defense to the claims and that therefore this issue just wasn't before the court. Now as to the Strickland presumption of reasonableness, Your Honor is exactly right. Under this court's decision in Mosley v. Atchison, what I think the nuance that the parties are really disputing here is that what Strickland says is that strategic decisions are entitled to a presumption of reasonableness. But that doesn't mean that every decision is entitled to a presumption that it was strategic. And in fact, this court said that in Mosley v. Atchison. It said, quote, Strickland establishes a deferential presumption that strategic judgments made by defense counsel are reasonable. But the presumption applies only if the lawyer actually exercised judgment. The consequences of inattention rather than strategic decisions are not entitled to the presumption of reasonableness. And here, I mean, we're not just, whether or not you attribute this to inattention or not wanting to take up time or just simply getting overwhelmed, we're not, I agree that the record is silent on this one way or the other. But there is nothing in the record to suggest that the decision to abandon the motion to suppress, not to actually to abandon it, not to formally withdraw it, but just not to get a ruling on it was not based on any strategy. And so finally, I just want to say that if, you know, we've asked this court to grant habeas relief. And if you think that the record is sufficient to conclude that the confession was involuntary, that's the relief we'd ask for. But I think at minimum, what should happen in this case is that the case should be remanded for the district court to hold an evidentiary hearing on the ineffective assistance of counsel claim. All these factual disputes about, say, whether what the medical evidence showed, whether what counsel's decision making was, all this other stuff is really an issue that should be decided by a fact finder in the first instance. So for that reason, we would ask the court to vacate the decision. Thank you, Mr. Rayfield. Mr. Rayfield, you have the thanks of this court for your handling of this case as court appointed counsel, including both of your firms and showed great professionalism by you to take the case from one firm to another. So thank you very much. Thank you, Your Honor. Mr. Sebula, thank you very much for your advocacy as well. The case will be taken under revise.